UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| ROBERT HAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 4:07-cv-73-AS-APR |
| | ) | |
| JOHN E. POTTER, | ) | |
| POSTMASTER GENERAL OF | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Docket No. 18) on Plaintiff Robert Hayman's suit alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). (Docket No. 1). See 29 U.S.C. 621 *et seq.*, 42 U.S.C. §2000 *et seq.* A hearing was held on the matter on November 7, 2008 and supplemental briefing was thereafter ordered. (Docket Nos. 27, 28, 32). Having considered all briefs filed in this case and the argument of counsel, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

## I. Background

Mr. Hayman was employed by the U.S. Postal Service for 32 years, the last 22 of which he worked as a letter carrier at the U.S. Post Office in West Lafayette, Indiana. In August of 2005, Mr. Hayman sought to speak with his supervisor Lani Lorey about an

extension of a grievance. She replied that she would not approve of the extension because she already had the paperwork. Mr. Hayman then shut the door to Lorey's office without her permission and an argument ensued, the details of which are disputed by the parties. Mr. Hayman was placed on "emergency placement" (the postal equivalent of administrative leave) as a result of the incident.

Sometime in 2006, Mr. Hayman was again placed on emergency placement as a result of his using a Postal Service telephone when he was not on duty to place personal telephone calls. Because the Postal Service had no policy restricting use of Post Office phones for personal use, Mr. Hayman filed a grievance.

In March 2006, Mr. Hayman returned to work following a surgery and was placed on limited duty for 4 months. However, on April 21, 2006, he agreed to modify his work assignment to include delivering Express Mail for 3-4 hours a day. Express Mail deliveries were required to be delivered at a set time.

On May 11, 2006, Mr. Hayman failed to deliver an express delivery by the appointed hour and, as a result, was issued a letter of warning on June 9, 2006. However, Mr. Hayman filed a grievance in response to the warning letter which resulted in the letter being expunged from his record.

On June 30, 2006, Mr. Hayman again failed to deliver an express delivery by the appointed time and, as a result, was issued a 7 day suspension. Again, Mr. Hayman filed a grievance in response to the suspension which resulted in the suspension being reduced to

a warning letter.

In September 2006, the West Lafayette Post Office was having an inspection week that involved a series of morning meetings. During these meetings, Mr. Hayman alleged that he attempted to raise his hand to talk several times but was ignored. The Postmaster claims that Mr. Hayman's supervisor, Karalee Ratliff, stated that she called on him once during a morning meeting and that Mr. Hayman told the other carriers that they had a right to count their mail and then he attempted to "reinforce the point." Ratliff prevented him from doing so, and Mr. Hayman responded by telling her that he was the union steward. Ratliff then pointed out that this was her meeting. The following day when Ratliff finished her talk, Mr. Hayman said he had something to say. Ratliff told him "not today" and indicated that they had a lot of mail to case and an inspection to get through.

Two other incidents allegedly occurred for which Mr. Hayman received no formal punishment. First, he alleges that he was criticized by Ratliff and another supervisor, Randy Brown, for failing to follow the proper procedures with regard to clocking in and clocking out. Second, he was allegedly reprimanded for "dilly-dallying" around after he was observed using the rest room 3 times in 1 hour.

After exhausting his administrative remedies, Mr. Hayman brought suit alleging that the Postmaster General treated him differently than his similarly situated co-workers because he is a man over the age of 40. Mr. Hayman also alleged that he was the victim of retaliatory harassment.

In support of their Motion for Summary Judgment, Defendant Postmaster General claims that Mr. Hayman has failed to set forth a prima facie case of age and gender discrimination. Specifically, Defendant argues that Mr. Hayman failed to prove that he was meeting his employer's legitimate expectations and that the warning letter he received was not an adverse employment action. Moreover, even if he had set forth a prima facie case of age and/or gender discrimination, Defendant argues that it would still be entitled to Summary Judgment because it had a non-discriminatory, non-pretextual reason for the action due to Mr. Hayman's failure to deliver a package on time.

Furthermore, with regard to Mr. Hayman's retaliation claim, the Defendant argues that Mr. Hayman has failed to prove that Defendant's actions were harmful to the point of dissuading a reasonable worker from making or supporting a discrimination claim.

## II. Jurisdiction

Due to the fact that this case presents federal questions, this Court has jurisdiction over the matter according to 28 U.S.C. §1331. Leavell v. Kieffer, 189 F.3d 492, 495 (7th Cir. 1999).

## III. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Nebraska v. Wyoming, 507 U.S. 584, 590 (1993). In deciding a motion for summary judgment, a court must view all facts in the light most

favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The initial burden is on the moving party to prove that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Conversely, in order to demonstrate a genuine issue of material fact, an adverse party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-50.

## IV. Discussion

A. Discrimination Claim

In order to determine whether Mr. Hayman has established a prima facie case of gender discrimination under Title VII or of age discrimination under the ADEA, this Court turns to the familiar framework of the McDonnell Douglas burden-shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Barricks v. Eli Lilly and Co., 481 F.3d 556, 559 (7th Cir. 2007) (holding that McDonnell Douglas is the appropriate approach to use for Title VII claims, as well as ADEA claims). Under this framework, Mr. Hayman must show the following: (1) he is a member of a protected class; (2) his performance met the defendant's legitimate expectations; (3) despite this performance, he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside of his protected class more favorably. Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 696 (7th Cir. 2006). If Mr. Hayman succeeds, the burden then shifts

5

to the defendant to articulate a legitimate, nondiscriminatory reason for its decision, which the plaintiff can then attack as a pretext for discrimination. Id.

Numerous arguments were made in the briefs, however, this Court need not resolve each argument raised by counsel. Instead, it is clear that Mr. Hayman's discrimination claims fail for two reasons. First, he has failed to make out a prima facie case of gender or age discrimination because he has not identified any similarly situated employees who were treated more favorably for behavior analogous to that of Mr. Hayman. Second, he has failed to prove that defendant's reasons for reprimanding him were pretextual.

First, McDonnell Douglas requires that employee-plaintiffs identify "similarly situated" employees outside the protected class who were treated more favorably. A similarly situated employee must be "directly comparable to [plaintiff] in all material respects." Atanus v. Perry, 520 F.3d 662, 673 (7th Cir. 2008); Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). In other words, Mr. Hayman must show that he and another employee "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Bragg v. Potter, 92 Fed.Appx. 342, 345 (7th Cir. 2004) (citing Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)).

Mr. Hayman identifies 2 employees who he claims are similarly situated: Terri Bisher and Rhonda Bradley. However, Mr. Hayman has failed to allege that either of these women

6

engaged in the same conduct he had. That is to say, Mr. Hayman fails to allege that either Bisher or Bradley delivered express packages late but were not punished. Instead, he claims that both were treated better than he was when they were injured. Yet, this does not make them similarly situated for the purpose of Mr. Hayman's discrimination claims. Thus, neither woman is similarly situated under the standards articulated by Bragg.

In addition, in his response brief, Mr. Hayman's counsel claims that Jean Cook and Melody White made late express deliveries but were not reprimanded for their behavior. In support of this statement, Mr. Hayman's counsel cites to his client's deposition. However, examination of Mr. Hayman's deposition reveals that he claimed that both women *were* given letters of warning for this behavior. Specifically, when asked by counsel who was not disciplined for delivering mail but should have been, he states: "Jean Cook, and Melody White. They had met--or they had late deliveries also. But they did get a letter of warning supposedly because–for the missed deliveries." (Docket No, 19-2 at 75).

Thus, Mr. Hayman has identified 2 employees–Bisher and Bailey–who are not similarly situated and 2 other employees–Cook and White–about whom very little is known, but who did not, according to Mr. Hayman's own deposition, receive disparate treatment. Because none of the co-workers Mr. Hayman identifies fulfills the forth prong under McDonnell Douglas, he has failed to set forth a prima facie case of age or gender discrimination and the defendant is entitled to summary judgment as a matter of law.

In addition, Mr. Hayman's argument as to the second element of the prima facie case

7

under McDonnell Douglas,–proof that he was meeting his employer's legitimate expectations–is unavailing. The critical question is whether a warning letter which was later expunged from Mr Hayman's record, and a written notice of suspension which was later reduced to a written letter, serve as evidence that he failed to meet the Postmaster's legitimate employment expectations. Mr Hayman argues that the reduction of the suspension and the elimination of the letter prove that he was adequately performing his job and that "something fishy" was going on such that summary judgment is inappropriate. Hague v. Thompson Distribution Co., 436 F.3d 816, 820 (7th Cir. 2006). However, Mr. Hayman's reliance upon Hague is misplaced. Hague stands for the proposition that in cases of reverse discrimination, (i.e. cases brought by a Caucasian or a male) the plaintiff must meet a heightened pleading standard under the first prong of McDonnell Douglas. Id.[1] Hague does not, as plaintiff alleges, direct this Court to overlook warning letters under the second prong of McDonnell Douglas because of "something fishy."

Moreover, any dispute about whether Mr. Hayman was meeting his employer's legitimate expectations does not alter the result here because Mr. Hayman has failed to prove pretext. According to Seventh Circuit precedent, pretext requires a plaintiff to present evidence that an employer has lied. See e.g., Miller v. American Family Ins. Co., 203 F.3d

---

1  Defendant did not bring up the issue in support of Summary Judgment. However, whether Mr. Hayman met the heightened pleading standard demanded by Hague for his reverse discrimination claim has no bearing upon this Court's decision and this Court expresses no opinion on the same.

8

997, 1008 (7th Cir. 2000) ("Pretext is more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action."). Even if Mr. Hayman put forth each necessary element of a prima facie case, he has produced no evidence that the defendant had a phoney reason for giving him the warning letters.

Though Mr. Hayman argues that he was not put on notice that the particular package was supposed to be delivered at noon, this argument misses the mark and fails to establish a genuine issue of material fact. The issue is whether the Post Office was discriminating against Mr. Hayman when it issued the punishments of a warning letter and a suspension. Mr. Hayman does not dispute that the particular parcels were delivered past noon in contravention of Post Office policy. He merely argues that the label was missing from the package and he was not on notice that it had to be delivered by noon. But under the circumstances Mr. Hayman describes, the Post Office would still have reasonably held a belief that he had violated their policies. Thus, even assuming *arguendo* that this Court were to find that Mr. Hayman was meeting his employer's legitimate expectations, Mr. Hayman's claim does not survive summary judgment because he has failed to establish pretext. Accordingly, Defendant is entitled to summary judgment as a matter of law.

B.  Retaliation Claim

In addition to his discrimination claim, Mr. Hayman brought suit claiming that his employers retaliated against him for objecting to discriminatory practices. See 42 U.S.C. §2000e-3(a). To establish a claim for retaliation, an employee can proceed under one of two

methods of proof: the direct method and the indirect method.² Andonissamy v. Hewlett-Packard Co.,547 F.3d 841 (7th Cir. 2008). Under the direct method of proof, an employee must demonstrate that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by his employer; and (3) there was a causal connection between the statutorily protected activity and the adverse action. Tomanovich v. City of Indianapolis, 457 F.3d 656, 662-63 (7th Cir. 2006).

It is undisputed that Mr. Hayman filed an EEOC claim in October 2006, thus fulfilling the first element under the direct method of proof.

As to the second element, Mr. Hayman must prove that he suffered an adverse employment action following his complaint. In order to satisfy this element under Burlington Northern, Mr. Hayman must show that the action in question was "materially adverse" such that it would dissuade a reasonable employee from making a claim of discrimination. Burlington Northern and Santa Fe RR Co. v. White, 126 S. Ct. 2405 (2006).

It should be pointed out that several of the adverse employment actions Mr. Hayman identifies in his response brief occurred *before* he engaged in statutorily protected activity in October, 2006. (Docket No. 25 at 17). Yet, instances of alleged retaliation can only be retaliatory if they occurred *after* Mr. Hayman engaged in the protected activity of complaining about discrimination based upon sex and age. See Tomanovich, 457 F.3d at 664

---

2   In the instant case, Mr. Hayman is proceeding under the direct method of proof. (Docket No. 22 at 13).

(holding that an employer's actions against an employee could not be retaliatory where the employee had not first lodged a complaint that constituted a protected activity). As a result, no such actions prior to October 2006 will be considered.[3]

Mr. Hayman alleges 2 additional "adverse employment actions." First, he claims that he was put on "constructive leave." (Docket No. 25 at 18). Second, he was allegedly given a less desirable route.

However, in his deposition, Mr. Hayman clearly states that he was assigned to the same route from August 2006, 2 months prior to his EEOC complaint, until March 2007, when he requested a new route.[4] Even assuming, that a route transfer would qualify as an adverse employment action under Burlington, the record is clear that Mr. Hayman was not, as his counsel states, given a new assignment in retaliation. To the contrary, he was given a new assignment only after he requested one in March of 2007.

Furthermore, Mr. Hayman claims that his voluntary decision to take administrative leave in November, 2006 was retaliatory. He claims that he walked off of the job in

---

3   Although Mr. Hayman's brief to the Court states that he was silenced in meetings "sometime after September 2006," he clearly states in his deposition that he was silenced in meetings in September, 2006. Unequivocal statements made in briefs should be supported by evidence in the record.

4   Mr. Hayman's deposition testimony reads as follows:
    Q   Okay. Did you work Route 655 from August of '06 until you bid on the new route in March of '07?
    A   Yes.
    Q   So your assignment never changed?
    A   No.
    (Docket No. 19-2 at 21.)

November 2006 after he was instructed to do work in 8 hours which would have taken him 16 hours to perform, yet, Mr. Hayman admits that this departure was voluntary.[5]

A voluntary departure does not qualify as an adverse employment action unless it qualifies as a "constructive termination." Indeed, Mr. Hayman's counsel seems to make the insinuation, unsupported by case law, that Mr. Hayman's departure was a constructive discharge. If, in fact, he is making a constructive discharge argument, Mr. Hayman bears the burden of showing that his departure from the Post Office was a constructive discharge. Washington v. Jenny Craig Weight Loss Centres, 3 F. Supp. 2d 941, 951 (N.D. Ill. 1998). Specifically, Mr. Hayman must show that his working conditions were either "so intolerable in a discriminatory way that a reasonable person would be compelled to resign," Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir. 1996), or that defendant "act[ed] in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns." Fischer v. Avanade, Inc., 519 F.3d 393, 409 (7th Cir. 2008).

---

5      Specifically, in his deposition, Mr. Hayman states: "On November 14th Kara Lee Ratliff, supervisor, come (sic) over to my case, told me I was doing my work–job wrong, told me I was dilly-dallying around, and that I was going to the restroom too often. She instructed me to do approximately 16 hours of work within 8 hours or be disciplined." (Docket No. 19-2 at 35). The questioning continued as follows:
Q      Did she instruct you to do 16 hours worth of work or you'd be disciplined?
A      She instructed me to put all of my mail up and take it out into the street, which would have taken approximately 16 hours that day, and do it within 8 hours or I was going to be disciplined.
Q      Did she say anything else?
A      She told me to be quiet, turn around, and face my case.
Q      Then what happened?
A      I said, "I am leaving. I'm leaving on stress leave, and I want administrative leave for all of the time that I'm off.
(Docket No. 19-2 at 35-36).

As to the first type of constructive termination, the standard Mr. Hayman must meet is high. E.E.O.C. v. Univ. of Chicago Hosp., 276 F.3d 326, 332 (7th Cir. 2002) ("in such cases, we require the plaintiff to demonstrate a discriminatory work environment even more egregious than the high standard for hostile work environment"); Drake v. Minnesota Mining & Mfr. Co., 134 F.3d 878, 886 (7th Cir. 1998) ("More than ordinary discrimination is necessary to establish a constructive discharge claim; in the 'ordinary' case, an employee is expected to remain employed while seeking redress."). The type of behavior Mr. Hayman claims to have experienced does not clear the "high bar" required by the Seventh Circuit with regard to constructive termination cases. See, e.g., Taylor v. W.S. Life Ins. Co., 966 F.2d 1188, 1191, 1199 (7th Cir. 1992) (holding that the jury could find constructive discharge where plaintiffs' boss made racist comments, brandished a pistol, and held it to one plaintiff's head); Brooms v. Regal Tube Co., 881 F.2d 412, 417, 420 (7th Cir. 1989) (holding that constructive discharge was established where a co-worker showed the plaintiff a racist pornographic photograph, told her that she was hired to perform the task depicted in the photograph, grabbed the plaintiff, and threatened to kill her). The allegations proffered by Mr. Hayman–that defendant asked him to perform more work than he was able and reprimanded him for "dilly-dallying"–simply do not rise to this level.

Moreover, Mr. Hayman cannot claim the second type of constructive discharge, wherein a plaintiff quits because "the handwriting [was] on the wall and the axe was about to fall," so the employee resigns." Fischer, 519 F.3d at 409. The Seventh Circuit has found this type of constructive eviction where, for example, an employee's belongings were packed

13

and her office was being used for storage, Univ. of Chicago, 276 F.3d at 332, or where an employee is told *repeatedly* that he is not wanted and has no future. Henn v. Nat'l Geographic Soc'y, 819 F.2d 824, 829-30 (7th Cir. 1987) (emphasis added). Although it is doubtful that Mr. Hayman's situation rises to this level, his constructive termination claim fails for a much more straightforward reason–he did not resign. The fact that Mr. Hayman merely took a leave rather than quitting his job outright, makes it evident that he did not feel that a termination of his employment was inevitable. Thus, Mr. Hayman has failed to prove that he has suffered a constructive discharge and his voluntary and temporary departure from Defendant's employ in November 2006 is not an adverse employment action under Burlington Northern.

The only other allegedly adverse employment action to which Mr. Hayman points in support of his retaliation claim are the statements Ratliff made prior to Mr. Hayman's voluntary leave. See supra n. 5. The operative question before this Court is whether Ratliff's statements to Mr. Hayman would dissuade a reasonable employee from supporting a claim of unlawful discrimination. Several circuit cases decided since Burlington Northern are instructive on this issue. For example, the Fifth Circuit held that a written warning for insubordination, for being argumentative, and for excessive absenteeism did not constitute an adverse employment action. DeHart v. Baker Hughes Oilfield Operations, Inc., 2007 WL 126081 (5th Cir. 2007). In addition, the Eleventh Circuit held that a requirement that the employee bring in a doctor's note when ill combined with a pattern of abusive comments cannot constitute materially adverse employment actions under Burlington Northern.

14

DaCosta v. Birmingham Water Works & Sewer Bd., 2007 WL 4165939 (11th Cir. 2007). Similarly, this Court finds that Ratliff's comments to Mr. Hayman do not constitute a materially adverse employment action. Thus, Mr. Hayman's retaliation claim fails and the Defendant is entitled to summary judgment on the issue.

Yet, even if Mr. Hayman had produced evidence of an adverse employment action, his claim would still not survive summary judgment because he has failed to prove that there was a causal connection between the protected activity and the adverse employment action. Generally, circumstantial evidence of a causal connection comes in three flavors: (1) suspicious timing; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employee did not deserve the punishment and that the employer's reason for the punishment is a pretext for discrimination. Volovsek v. Wis. Dep't of Agric., Trade, & Consumer Prot., 344 F.3d 680, 689-690 (7th Cir. 2003).

Mr. Hayman only presents evidence of suspicious timing. (Docket No. 25 at 19). However, this Circuit has held that "suspicious timing alone rarely is sufficient to create a triable issue." Andonissamy, Nos. 07-2387, 07-2390 at 14-15 (quoting Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004) ("On summary judgment in particular 'it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact.'"); Moser v. Indiana Dept. of Corrections, 406 F.3d 895, 905 (7th Cir. 2005). Thus, even if his retaliation claim were not otherwise defective, Mr. Hayman's claim still would

15

not survive summary judgment.[6]

## V. Conclusion

For the reasons stated herein, the record as construed in favor of Mr. Hayman fails to show genuine issues of material fact. Accordingly, Defendant John E. Potter, Postmaster General of the United States, is entitled to summary judgment under Federal Rule of Civil Procedure 56(a). Therefore, Defendant's Motion for Summary Judgment is hereby **GRANTED** as to Mr. Hayman's claims. This case is now considered closed.

**SO ORDERED**.

**DATED: February 11, 2009**

                                                                                  /s/ ALLEN SHARP
                                                          **ALLEN SHARP, JUDGE**
                                                          **UNITED STATES DISTRICT COURT**

---

6    In his discrimination argument, Mr. Hayman identified 4 women who he alleged were similarly situated employees. However, as noted in Part IV.A, employees Bisher and Bailey are not similarly situated to Mr. Hayman, and employees Cook and White did not receive disparate treatment according to Mr. Hayman's deposition. Thus, even if Mr. Hayman had made an argument regarding similarly situated employees in his retaliation claim, the defendant would still be entitled to summary judgment.